**Affirmed and Opinion filed June 21, 2012.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00513-CR

---

**BRIAN WALKER SIMON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1263348**

---

## OPINION

In this appeal we consider the propriety of a trial court's denial of a mid-trial request to poll empanelled jury members about their possible exposure to media coverage of the case. In a single issue appellant Brian Walker Simon asserts that the trial court

erred in failing to make this inquiry. He urges this court to reverse his conviction for criminal trespass and remand for a new trial. We affirm.

## BACKGROUND

Appellant was charged by indictment with the felony offense of burglary of a building with intent to commit theft. The charges stemmed from an intrusion into an animal shelter. The intruder cut a hole in a fence surrounding the shelter, entered the building, and absconded with a computer. The incident occurred in the middle of the night, while the shelter was closed. Appellant pleaded "not guilty" to the charged offense. A jury trial followed.

According to the record, in the months before the intrusion, appellant had tried to obtain information from the animal shelter about his dog Nino, a Chihuahua. Appellant had accused the shelter of euthanizing the dog. During these encounters, appellant interacted with shelter employees. After the break-in, two shelter employees viewed a surveillance video of the intruder carrying a computer. Both employees identified appellant as the intruder.

During trial, several witnesses testified to having seen a local television news story featuring appellant's claim that the animal shelter had euthanized his dog. The broadcast, which aired ten months before trial, is not part of the appellate record. Nor does the record contain any other media coverage of the case.

Appellant took the stand in his own defense and testified to his belief that the shelter was negligent in euthanizing his dog and that the shelter was covering up evidence of the dog's death. Appellant claimed to have entered the shelter premises and the building with the intent to observe a moment of silence for the dog he believed to have died at the hands of shelter employees. According to appellant, he took the shelter's computer tower in the hope that it would contain evidence of the shelter's alleged negligence and cover-up.

2

The jury did not find appellant guilty of burglary but convicted him of the lesser-included offense of criminal trespass. The trial court sentenced appellant to one day of confinement in a county jail and assessed a fine.

## ISSUE PRESENTED

In his sole issue appellant asserts the trial court reversibly erred in refusing his mid-trial request to question the empanelled and sworn jury to determine whether any of its members had viewed a news story relating to appellant's case.

## STANDARD OF REVIEW

When, as in this case, a party asks the trial court to poll empanelled jurors about news coverage of the case, a trial judge is faced with the decision to deny the request and thereby preserve the integrity of the jury or grant the request and risk exposing members of the jury, for the first time, to the existence and contents of media coverage they might not have seen. *Mays v. State*, 318 S.W.3d 368, 377–78 (Tex. Crim. App. 2010); *see Powell v. State*, 898 S.W.2d 821, 828 (Tex. Crim. App. 1994). A trial court's ruling on a party's request to interview empanelled jurors about media coverage is reviewed under an abuse-of-discretion standard. *Mays*, 318 S.W.3d at 378.

## ANALYSIS

We begin our analysis by considering the context of appellant's request to inquire of the jury about possible exposure to media coverage concerning the case. The record reflects that the request was made toward the end of the trial, after the parties had rested and the evidence was closed, but before the trial court charged the jury. At that time, appellant's trial counsel sought to question jurors about whether they had viewed a recent news story that featured "bits and pieces of the previous [news] story." According to appellant's trial counsel, the news story was prejudicial and one-sided. But, counsel had not personally seen the story and did not know when it had aired. Although appellant's

3

trial counsel characterized the broadcast as prejudicial, he did not identify the contents of the news story or provide any other information concerning it.

The trial court denied appellant's request, noting that questioning about media coverage should have been covered in voir dire. Though the trial court declined to allow the mid-trial questioning of the empanelled jury, the trial court indicated that other measures would protect against the jury's consideration of any such exposure to media coverage.

The record reflects that soon after the jury was empanelled and sworn, the trial court instructed jurors to render a verdict based only on the evidence received during trial. The trial court directed the jurors to avoid going online or using the internet to search for anything related to the case and specifically admonished the jury to base the verdict on the evidence received in the courtroom. *See Mays*, 318 S.W.3d at 378. In ruling on appellant's request to poll the jury, the trial court noted that the jury charge contained an instruction that jurors were not to consider any information other than the evidence in the case.[1] At the conclusion of the guilt-innocence phase, the trial court again reminded the jury of its obligations to base the verdict on evidence, and, when charging the jury from the written charge, the trial court specifically instructed jurors that they could not consider, discuss, or relate any matters that were not in evidence. *See id.* In the absence of evidence indicating that members of the jury failed to do so, we presume the jurors followed the instructions of the trial court. *See Gibson v. State*, 29 S.W.3d 221, 225 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

Though a jury's exposure to media coverage holds the potential to compromise a fair trial, a presumption of prejudice does not arise solely as a result of media coverage. *See Powell*; 898 S.W.2d at 826. In this case appellant had an opportunity during voir dire to ask potential jurors about media coverage that occurred before trial. Appellant asked

---

[1] When the trial court declined the request to poll the jury, appellant moved for a mistrial and the trial court overruled appellant's motion. Appellant does not complain of this ruling.

one question during voir dire inquiring of the members of the venire panel whether they had heard good or bad things about the shelter in the news; only one veniremember had heard about the shelter in the news and had heard that the shelter euthanized animals. Likewise, during trial, appellant had the opportunity to make the trial court aware of the contents of the allegedly "prejudicial" recent news story that allegedly contained "bits and pieces" of earlier coverage. Appellant did not apprise the trial court of the contents of either news story. Instead, appellant waited until after the jury was empanelled and trial was underway to make his request to poll the jury about possible exposure to media coverage. This timing put the trial court on the horns of a dilemma: deny the request and thereby preserve the integrity of the jury or grant the request and risk exposing the jurors for the first time to the existence and contents of media coverage they might not have seen. The trial court chose the first option. In doing so, the trial court foreclosed the risk that, by allowing the requested inquiry, the court would expose the jury to the very information appellant believed to be prejudicial to his case. Denying appellant's request preserved the integrity of the jury.

Given the lack of any evidence relating to the specific contents or nature of the news story in question, the trial court's specific admonishments to the jury not to consider matters not in evidence in reaching its verdict, and the legal presumption that the jury followed the trial court's instructions, we can hardly conclude the trial court abused its discretion in balancing the risk of possible prejudice from media coverage against the need to preserve the integrity of the jury. *See Mays*, 318 S.W.3d at 377–79; *Powell*, 898 S.W.2d at 828. Under the circumstances of this case, we conclude that the trial court was acting within its discretion in denying appellant's request to poll the jury about the news story. *See Mays*, 318 S.W.3d at 377–79; *Powell*, 898 S.W.2d at 828. Finding no abuse of discretion, we overrule appellant's sole issue on appeal.

5

The trial court's judgment is affirmed.


_____
Kem Thompson Frost
Justice


Panel consists of Justices Frost, Brown, and Christopher.

Publish — TEX. R. APP. P. 47.2(b).